

Exhibit B

**General Civil and Domestic Relations Case Filing Information Form**

GEORGIA, MUSCOGEE COUNTY
SUPERIOR / STATE COURT
FILED IN OFFICE

☐ Superior or ☒ State Court of Muscogee_____ County    AUG 3 0 2023

_12:15pm  QR_
DEPUTY CLERK

| For Clerk Use Only | |
|---|---|
| Date Filed 08·30·2023 | Case Number SC2023CV001022 |
| MM-DD-YYYY | |

**Plaintiff(s)**

Carroll Jerry P.
Last       First       Middle I.   Suffix   Prefix

Last       First       Middle I.   Suffix   Prefix

Last       First       Middle I.   Suffix   Prefix

Last       First       Middle I.   Suffix   Prefix

**Defendant(s)**

Metropolitan Life Insurance Company
Last       First       Middle I.   Suffix   Prefix

Last       First       Middle I.   Suffix   Prefix

Last       First       Middle I.   Suffix   Prefix

Last       First       Middle I.   Suffix   Prefix

**Plaintiff's Attorney** _____ **State Bar Number** _____ **Self-Represented** ☒

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☒ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____        _____
          Case Number                              Case Number

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____  **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

GEORGIA, MUSCOGEE COUNTY
SUPERIOR / STATE COURT
FILED IN OFFICE

AUG 3 0 2023

12:15 pm    OR

DEPUTY CLERK

# IN THE STATE COURT
# MUSCOGEE COUNTY
# STATE OF GEORGIA

Air Force Veteran Jerry Paul Carroll, Age 82,

      Plaintiff,

v.

Metropolitan Life Insurance Company a/k/a/,
BRIGHTHOUSE LIFE INSURANCE COMPANY a/k/a/,
MetLife Services and Solutions, LLC a/k/a/,
MetLife Dental Insurance a/k/a,
MetLife Group, Inc. a/k/a/,
MetLife, Inc. a/k/a/,
New England Life Insurance Company a/k/a,
MetLife Insurance Company of Connecticut a/k/a,
General American Life Insurance Company a/k/a,
Metropolitan Tower Life Insurance Company a/k/a,
MetLife Investors Life Insurance Company a/k/a,
First MetLife Investors Life Insurance Company a/k/a,
MetLife Investors USA Insurance Company a/k/a,
Delaware American Life Insurance Company a/k/a,
MetLife Home Loans LLC,
      successor by Merger to MetLife Bank N.A.,
and their attorneys, officers, agents, and assigns,

      Defendants.

_____/

**JURY TRIAL DEMANDED**

**CIVIL ACTION FILE NO.:**_____

SC2023CV001022

## SUMMONS

## TO THE ABOVE NAMED DEFENDANTS:

    You are hereby summoned and required to file with the Clerk of said Court and Serve upon the Plaintiff whose name and address is:

<div align="center">

Jerry Paul Carroll

1611 21st Street

Phenix City, Alabama 36867

</div>

an Answer to the Complaint which is herewith served upon you, within 30 days after the service of this Summons upon you exclusive of the day of service. If you fail to do so Judgment by Default will be taken against you for the relief demanded in this Complaint.

This ____30th____ day of ___August___, 2023

_____      By ___Cari Reid___

Clerk of Circuit Court              Deputy Clerk

0

# IN THE STATE COURT
# MUSCOGEE COUNTY
# STATE OF GEORGIA

GEORGIA, MUSCOGEE COUNTY
SUPERIOR / STATE COURT
FILED IN OFFICE

AUG 3 0 2023
_12:15pm_ _CR_
DEPUTY CLERK

Air Force Veteran Jerry Paul Carroll, Age 82

   Plaintiff,

v.

Metropolitan Life Insurance Company a/k/a,
BRIGHTHOUSE LIFE INSURANCE COMPANY a/k/a/,
MetLife Services and Solutions, LLC a/k/a,
MetLife Dental Insurance a/k/a,
MetLife Group, Inc. a/k/a,
MetLife, Inc. a/k/a,
New England Life Insurance Company a/k/a/,
MetLife Insurance Company of Connecticut a/k/a,
General American Life Insurance Company a/k/a/,
Metropolitan Tower Life Insurance Company a/k/a,
MetLife Investors Life Insurance Company a/k/a/,
First MetLife Investors Insurance Company a/k/a,
MetLife Investors USA Insurance Company a/k/a,
Delaware American Life Insurance Company a/k/a/,
MetLife Home Loans LLC,
   successor by Merger to MetLife Bank, N. A.,
And their attorneys, officers, agents, and assigns,

   Defendants.
_____/

CIVIL ACTION FILE No._____
SC2023CV001022

# **COMPLAINT**

1

1.       COMES NOW, Plaintiff in the above-styled action, AIR FORCE

DISABLED VETERAN JERRY PAUL CARROLL, Age 82, (hereinafter

"Plaintiff"), and brings this action which presents his claims relating to MetLife

Elder Abuse of a Disabled Veteran, pursuant to O.C.G.A. § 16-5-102 (2020), and

Elder Financial Exploitation of disabled persons including Veterans which is

prohibited under O.C.G.A. § 16-5-102(a), against MetLife Dental Insurance of

Metropolitan Life Insurance Company, and Metropolitan Life Insurance Company,

and also MetLife Home Loans, (hereinafter MetLife). MetLife has violated their

fiduciary trust in the actions against Plaintiff and his deceased parents by denying

in 2017 that Plaintiff's parents had left Plaintiff a paid-out Metropolitan life

insurance policy, No. 133430340, as shown in Plaintiff's Exhibit "A" as attached

herein. MetLife has previously signed a Florida Settlement Agreement in 2012

referenced herein as Persuasive Authority in their violation of Florida Statute §

624.155, promising to no longer conceal life insurance policies from either the

person who owned the policy or the applicable State Department of Revenue

Unclaimed Property Office which in this case is The Georgia Department of

Revenue as Plaintiff was living in Marietta, Georgia when Paul Cecil Carroll passed

away, and continuing for the following seven years. All Plaintiff's claims in this

action arise from MetLife's violations that occurred in Georgia. But Plaintiff

contends that MetLife had concealed such paid-for life insurance policy from

November 1940 and paid in full in November 1955 since at least April 1988 from

both Plaintiff and the Georgia Department of Revenue Unclaimed Property office,

a violation of O.C.G.A. § 44-12-190, et seq. In Plaintiff's conversations with States

who brought the action against MetLife for concealing life insurance debts to

beneficiaries including Florida, Illinois, Alabama, Delaware, and Minnesota,

Plaintiff found that the 22 States who brought the action appeared to possibly be

unaware until seeing Plaintiff's Exhibits "A" and "B" that MetLife was still not yet

complying with the original Settlement Agreement which ostensibly caused

consumers to relax and MetLife was continuing to not pay the Georgia Department

of Revenue or Plaintiff if the beneficiary was elderly and MetLife's chance of

getting caught was unlikely. Plaintiff contends that Exhibit "A" indicates Elder

Financial Exploitation *mens rea* in that MetLife claimed to have found and paid

3

millions of dollars in previously concealed life insurance debts from beneficiaries

after signing the 2012 Florida Settlement Agreement referenced herein as

Persuasive Authority under Florida Statute § 624.155, and such claim is made in

the rewrite of the Florida Settlement Agreement provided to Illinois in *actus reus*,

but MetLife still falsely denies Plaintiff, at age 82, is a beneficiary of a life insurance

policy in MetLife's evasive false statements. MetLife promised to cease concealing

policies from survivors who owned a policy, but since Plaintiff at 82 is four months

short of being 10 years beyond his life expectancy of 73.2 years, and Plaintiff is

suffering from atrial fibrillation, a protein indicator for cancer, a swollen prostate,

and other maladies of which such information is easily accessible to MetLife

through medical background records as a health and dental insurer, MetLife not

only did not notify Plaintiff of his November 18, 1940 policy, but they now admit

and apologize for even denying he had a policy in Plaintiff's Exhibit "B" as attached

herein.

## ELDER FINANCIAL EXPLOITATION AND INTIMIDATION

2.      Currently, MetLife is claiming to be the 'beneficiary,' and that Plaintiff is only the 'insured.' Such Elder Financial Exploitation was also reported in the CBS - TV 60 MINUTES episode, 'Not Paid, The Life Insurance Industry Under Investigation,' of 2016 in which the consumers whom MetLife concealed owing life insurance beneficiary payments to such as Joseph Bigony for his deceased relative Francis Bigony, were elderly persons whose parents or relatives had passed away and MetLife continued profiting from investing these concealed owed funds as the beneficiaries grew older and ostensibly many passed away questioning what happened to the MetLife policy that was known by the MetLife payment envelope hanging on a nail at the front door of Plaintiff's and their homes from which the MetLife agent took weekly payments. Florida *sua sponte* fined MetLife $40 million for concealing life insurance policies from beneficiaries and was joined by 21 additional States which supports Plaintiff's claim of Persuasive Authority.

## ELDER PHYSICAL ABUSE, DENTAL INFECTION SINCE 2016

3.      Plaintiff also pays and has paid about $58 monthly for 'High Plan' MetLife dental insurance since 2015 or 2016, possibly earlier, MetLife continued Elder

5

Financial Exploitation and Elder Physical Abuse and intimidation of Plaintiff by falsely claiming the dental bridge prescribed by Dr. Joseph Arnold was excluded in Plaintiff's dental insurance policy and by not honoring Plaintiff's numerous requests for a copy of his 2016 dental insurance policy even as of this August 2023 filing. Ostensibly MetLife in claiming in 2022 that Plaintiff had only been insured since about 2019, sought to conceal Plaintiff's actual contract from earlier. MetLife's Bad Faith Dental Insurance denials to Dr. Gary Wolanek and Dr. Joseph Arnold have not only left Plaintiff suffering from a recurring infection or inflammation since 2016, but MetLife has caused him to lose an expensively restored tooth. Even in the more recent copies sent to Plaintiff of a MetLife dental policy, Plaintiff found that MetLife falsely quoted the wrong codes as excluded in EXCLUSION #51 and ostensibly tried in vain to correct their violations in trying to make their definitions override American Dental Association CPT standard dental codes. Plaintiff has verified MetLife's false exclusion claim with exemplary dentists and an M.D. If the codes don't fit, MetLife must submit. Also, during 2016 MetLife left Plaintiff with a continuing infection and/or inflammation confirmed by

6

Plaintiff's numerous prescriptions for Amoxicillin, Clindamycin, and Keflex that

have continued till the present, August 2023, by at first claiming the reason MetLife

would not approve re-treatment of a root canal was that Dr. Gary Wolanek was not

in-network. MetLife had information from their insurance risk statistics with

Plaintiff's advanced age and medical conditions that the chances of MetLife ever

having to pay for Plaintiff's dental work were lower than consumers of middle age

and Elder Physical Abuse and Elder Financial Exploitation continued. MetLife

changed their excuses twice after first saying the reason was that Dr. Wolanek was

not in-network. Except for this unreasonable and intimidating excuse by MetLife,

Plaintiff would not have even known that Dr. Wolanek was not in-network.

MetLife's runaround to avoid paying Plaintiff's just dental needs has now caused

splintering when MetLife's Gilbert, on or about August 4th, 2022,  did not provide

emergency treatment causing tooth loss and discovery in August 2023 by Doctors

Arnold and Allen with the finding of a broken piece of tooth in the gum that has to

be surgically removed as it is making Plaintiff's 'partial' too painful to eat with and

painful when it is removed. MetLife's continuing runaround now necessitates the

7

Doctor prescribed loss of the second tooth, prescription for implant replacements, dental surgery to remove the broken root fragment due to MetLife's 'Gilbert's' false promise to provide emergency care, and thousands of dollars of work caused by MetLife's Bad Faith dental nonpayment from 2016 to present. Root canal retreatment by Dr. Wolanek or the bridge by Dr. Arnold could have saved seven years of pain and suffering, painful surgery, and thousands of dollars. The teeth shifting during 2023 resulted in an orthodontic prescription by Doctor Matt Roche that was claimed by MetLife as never having been received but, MetLife concealed their printed directive to Dr. Roche demanding Plaintiff's orthodontic plan not even be sent to MetLife causing Dr. Roche's staff to tell Plaintiff that MetLife had denied orthodontics even though MetLife was the cause of the teeth shifting. MetLife owes Doctors Arnold, Allen, and Roche for their prescribed treatments while this action is ongoing to relieve Plaintiff's pain and suffering.

## **ELDER FINANCIAL EXPLOITATION PAID ABOUT $233,407.01**

4.    Six years after denying Plaintiff owned a MetLife life insurance policy in

2017, in 2022 MetLife apologized when Plaintiff pointed out that MetLife could

not show having paid any family member or the Georgia Department of Revenue

Unclaimed Property Department as required by O.C.G.A. § 44-12-190, et seq., and

the additional six years runaround raised the total amount MetLife collected from

their investment accounts just on Plaintiff's life insurance policy alone by such false

MetLife claims to Plaintiff from 2017 to 2022, to an amount calculated by the

Oklahoma Treasurer's office to be in excess of $233,407.01. Plaintiff contends that

MetLife in an act of Elder Financial Exploitation prevented Plaintiff from earning

the same calculable $233,407.01 by concealing that Plaintiff had a paid-in-full life

insurance policy thereby seizing those profits for MetLife five years after signing

the Florida Settlement Agreement swearing to no longer conceal such policies from

the owners. Plaintiff contends MetLife's risk of being caught violating an insurance

contract and a 2012 Florida Settlement Agreement referenced herein under

Persuasive Authority, was low due to Plaintiff's age and health problems. The

attached Plaintiff's Exhibit "C," and "C" pg-2 shows that MetLife knew their denial

9

to Plaintiff of his having a life insurance policy was an unlawful violation as MetLife had previously in 2012 signed a Settlement Agreement with the State of Florida swearing to cease concealing life insurance policies from State Unclaimed Property authorities and policy owners, 22 additional States joined this action so MetLife's signing of the Florida Settlement Agreement acknowledged MetLife's concealment of owing consumers in all States whether or not a particular State joined. MetLife also knew in signing the Florida Settlement Agreement that their claim to Jessica Luff of the Delaware Department of Insurance that Plaintiff was not the 'beneficiary' but was the 'insured' which made MetLife the only beneficiary from at least April 5, 1988, to beyond July 24, 2023, and such claim was known to be false by MetLife, but just the act of concealing the policy from Plaintiff alone as shown in Exhibit "A" is an already admitted unlawful violation MetLife had previously signed and agreed to in the Florida Settlement Agreement.

## CBS TV 60 MINUTES 'NOT PAID', METLIFE CONCEALMENT

5.      In April 2016, CBS-TV 60 MINUTES reporter Leslie Stahl, Florida CFO Jeff Atwater, Florida Insurance Commissioner Kevin McCarty, and Oklahoma

Treasurer Ken Miller reported that MetLife had concealed money belonging to life

insurance policy beneficiaries as shown in Plaintiff's Exhibit "D" as attached

herein. Plaintiff's Exhibit "D" pages 2, 3, and 4 show that Minnesota Secretary of

Commerce Mike Rothman in a Minnesota WCCO-TV news report also reported

MetLife's concealment and stated that it was not MetLife's money, which supports

Plaintiff's claim that MetLife agent Groover had in 1966 told Plaintiff and Jane

Galitello Carroll, that Metropolitan life insurance payments go into a Trust for

consumers to share in each other's tragedies with MetLife operating from the

investments, as a fiduciary MetLife's attorneys cannot oppose Plaintiff in Court, in

Georgia no attorney can represent opposing parties without at least the consent of

both, Plaintiff does not consent for his money to be paid to MetLife's attorneys to

oppose him. Even the Georgia definition of 'beneficiary' shows that the money

owed Plaintiff or the Georgia Department of Revenue Unclaimed Property Office,

by MetLife, is in Trust:

11

O.C.G.A. 53-12-2(2), "Beneficiary" means a person for whose benefit property is

held in trust, regardless of the nature of the interest, and

includes any beneficiary whether vested or contingent....

6.    Since MetLife has previously been found liable or guilty of concealing money

owed to beneficiaries, not paying just claims in Owens v. Metropolitan Life

Insurance Company, 2:14-cv-00074(N.D. Ga.) (2020), a residential mortgage fraud

fine of $123.5 million dollars, and since MetLife cannot use Plaintiff's money

against him in Court, MetLife has previously exhausted all defenses except

frivolous runaround delay which pays MetLife's investment accounts. MetLife is

attempting to get all States to send all consumer complaints to the State of Delaware

and claiming to the Delaware Department of Insurance that Plaintiff is the "insured"

thereby making MetLife the "beneficiary," but, since Metropolitan Life Insurance

Company is incorporated in New York Plaintiff contends this is to some extent

another of many MetLife runarounds as shown herein. On July 24, 2023, MetLife

having been confronted with their absurd claim by Plaintiff writing letters to law

enforcement with copies to the MetLife CEO showing that MetLife is claiming to

be the 'beneficiary' of Plaintiff's life insurance policy and MetLife further claiming

that Plaintiff is only the 'insured,' MetLife admitted such by sending Plaintiff a

form to name a beneficiary which was concealed in Dorothy S. Carroll's life

insurance policy. Dorothy S. Carroll is unknown to Plaintiff. Plaintiff is the

'beneficiary', not the 'insured', and therefore will not be returning the form to

MetLife. But MetLife appears to be steering all the States to require that all

complaints go to Delaware, a State that is reported to favor corporations by CNBC,

Harvard Business Services, and also advertisements by Delaware itself soliciting

corporation registration. The New York Department of Financial Services has

expressed to Plaintiff that since MetLife is incorporated in New York and not

Delaware, New York appears to be the State where consumers should file

complaints, and New York accepted Plaintiff's complaint after Plaintiff had been

tied up for months complaining fruitlessly to Delaware. MetLife's website even

shows that MetLife Dental Insurance is administered by Metropolitan Life

Insurance Company which is incorporated in New York and the Delaware

Department of Insurance refuses to provide Plaintiff with documentation claiming

that MetLife Dental Insurance is incorporated in Delaware. Plaintiff contends that

MetLife's claim that MetLife Dental Insurance complaints should go to Delaware

would probably not prevail if properly challenged in Court as MetLife Dental is a

subsidiary of Metropolitan Life Insurance Company and MetLife's claim to the

Georgia officer James Hartz was just more runaround and no such defense by

MetLife should be considered. MetLife had already signed the Florida Settlement

Agreement agreeing that Plaintiff was the policy beneficiary as also confirmed by

O.C.G.A. § 53-12-2(2). On July 26, 2023, Plaintiff uncovered in a conversation

with the New York Department of Financial Services that New York is where

MetLife is incorporated, not Delaware and Plaintiff immediately emailed Jessica

Luff of the Delaware Department of Insurance asking why these Complaints are

being required to be sent to Delaware and why is Delaware even representing that

they are handling the Complaints. Delaware at first claimed to have handled

Plaintiff's Life Insurance Complaint with no results even though the Situs was

Alabama and not Delaware. Georgia Insurance Commissioner Officer James Hartz

showed Plaintiff a dental insurance letter from MetLife claiming that Delaware is

14

the Situs, but the MetLife Life Insurance policy and the MetLife originated VA

home loan are not connected to Delaware, and MetLife Dental may be found to also

not be. Eventually, Ms. Luff claimed to Plaintiff that the dental insurance policy

was registered in Delaware, but MetLife Dental Insurance is claimed to be a

subsidiary of Metropolitan Life Insurance Company which is incorporated in New

York. Plaintiff asked Ms. Luff for documentation of the Delaware incorporation of

MetLife Dental and also Delaware DOI officer Jeffrey Schott, but neither has

responded. Plaintiff will show additional cases supporting his claim that MetLife

and its attorneys have a fiduciary responsibility to Plaintiff and cannot use his own

life insurance and dental insurance payments money to try to avoid having to pay

him owed funds. Plaintiff contends that Georgia plaintiff Laura Owens established

that MetLife claims to be a fiduciary in <u>Owens v. Metropolitan Life Insurance</u>

<u>Company.</u>

7.    <u>OWENS v. METROPOLITAN</u> also showed that MetLife profits from tying

up juries by pretending to not know they have been adjudicated guilty of the same

offenses of Bad Faith and not paying just debt over and over for, in Owens's case

15

$95,000 from her husband's death, or other insured claims they have previously been forced to pay because such evasion is profitable for MetLife's investment accounts. The quoting from Owens, a well-settled case since Owens won $80 million from MetLife in Georgia, could, from Plaintiff's research, be quoted in almost every lawsuit against MetLife for not paying just debts to elder consumers until sued, a practice that was devised by former MetLife executive Gary Goldsholle to allow MetLife to "hold onto death benefits" that it otherwise would have to pay out so that MetLife could continue to invest the funds for its own enrichment and "make a nice spread on the money":

> "I looked at this and said this is crazy" said Goldsholle. "What are we doing to retain some of this money? It's very expensive to bring money in the front door of an insurance company. You're paying very large commissions and sales expenses."

> So.. [he] came up with a way for MetLife to hold onto death benefits.

> "The company would win because we would make a nice spread on the money," Goldsholle says, while customers would earn interest on their

16

accounts. MetLife, he says, could earn 1 to 3 percentage points more from

their investment income- mostly from bonds- than it pays out to survivors.

25. This practice by which MetLife lends plan assets due beneficiaries to

itself is profitable for MetLife. According to Goldsholle, "MetLife makes

$100 million to $300 million a year from investment returns on the benefits

it holds." [1]

*Id.*

Laura Owens's attorneys quoted the foregoing from David Evans, *Fallen Soldiers'*

*Families Denied Cash as Insurers Profit*, Bloomberg News, July 28, 2010. In

reading the article Plaintiff discovered that J.P. Morgan Chase is paid by one or

more insurers to let their name be used on drafts that are nothing but an IOU and

not negotiable beneficiary life insurance payments. MetLife has not even yet

deposited the money to cover the drafts in their continuing perfection of evasive

actions. Since MetLife claims they transferred Plaintiff's mortgage to J.P. Morgan

---

[1] David Evans, *Fallen Soldiers Families Denied Cash as Insurers Profit*, Bloomberg News, July 28, 2010, available at
http://www.bloomberg.com/news/2010-07-28/fallen-soldiers-families-denied-cash-payout-as-life-insurers-
boost-profit.html.

17

Chase but business solicitations to Plaintiff indicate otherwise, this is disturbing to

Plaintiff. Beneficiaries who tried to spend the drafts such as one who tried to

purchase a bed were told they were not negotiable. Of information and belief,

MetLife makes at least 3 percent from the money owed to beneficiaries but not paid,

and then only admits that MetLife pays beneficiaries 1 percent if that. In reading

the complete Bloomberg article, Plaintiff was surprised to find that Bloomberg also

agreed that MetLife is claiming through some State officials that the life insurance

payments are an investment for retirement benefits that are FDIC insured. But

Bloomberg shows that they are not FDIC insured and could result in a catastrophe

like the 1930s 'run on the bank' to consumers who are counting on that money for

their retirement. Plaintiff believes MetLife's apparent evasion of paying insurers

unless sued and holding retirement funds that are uninsured will lead to MetLife

being taken over by one of the four big banks as MetLife Bank which no longer

exists appears to have somewhat been taken over by Chase Bank in the case of

plaintiff's mortgage, but solicitations received by Plaintiff indicate that MetLife

made a 'sweetheart contract'[2] with Chase Bank administered by Carrington Mortgage. Chase passed it to Carrington who refuses to explain why they charged Plaintiff payments of at least $373 monthly when his house payment was already overcharged at $330.66 and MetLife is responsible for Plaintiff's losses of about $37,000 from Carrington's CFPB fine for concealing the Cares Act, caused by MetLife's residential mortgage fraud fine and the closing of MetLife Bank.

## FIDUCIARY AS A CONFIDENCE SCHEME

8.    Wanda Glenn also established that MetLife claimed to be a fiduciary and that MetLife committed a Conflict of Interest when she prevailed in <u>Metropolitan Life Insurance Company v. Glenn</u>, 554 U.S. 105 (2008), U.S. Supreme Ct. Docket No. 06-923. MetLife committed Bad Faith in refusing and evading Plaintiff's paid for MetLife Dental Insurance Doctor-prescribed care, policy/group # 0154897, a private MetLife group, not an authorized VA Group, thereby causing Plaintiff infection and/or inflammation, pain and suffering, and the loss of a fully restored tooth which further caused Plaintiff's adjoining teeth to shift as shown in Plaintiff's

---

[2] Robert F. Kennedy *The Enemy Within,* Harper and Row (1960)

Exhibit "E," "E"- pg. 2, "E" pg. 3, and "E" pg. 3.5, shows that MetLife caused

Plaintiff additional dental problems and health problems from missing teeth by not

approving Dr. Arnold's prescription for a bridge. Exhibit "E" pg. 3.5 shows the

August 2023 finding by Doctors Arnold and Allen of the broken piece of the tooth

that is causing Plaintiff some of the pain. Plaintiff's Exhibits "E" pages 4 and 5

show that Plaintiff's MetLife dental policy stays current from automatic bank

deductions and Plaintiff's MetLife Home Loan originated VA Loan is current and

never late. Plaintiff's Exhibit "B" shows that Plaintiff's Life Insurance policy was

paid in full in November 1955. Plaintiff is not making a Bad Faith claim regarding

nonpayment of life insurance. Plaintiff is not making any life insurance claim. The

frontal tooth gap pictured in Plaintiff's Exhibit "E" page 2 is from Plaintiff's lost

tooth lost on or about August 5, 2022, due to MetLife refusing to approve Dr. Gary

Wolanek's treatment request for an infection, MetLife refusing Dr. Arnold's request

for a bridge, and MetLife refusing to approve Dr. David Allison's root canal

retreatment emergency request which confirmed Dr. Wolanek's request, also not

approved, and according to Dr. Allison's insurance coordinator Tammy, was not

allowed to be submitted by MetLife's direction until Dr. Allison received a

commitment from Delta Dental, and some shifting is shown in the picture taken

May 10, 2023, and more shifting is shown in the photo taken Wednesday, July 5th,

2023. As such MetLife caused tooth loss, pain and suffering, infection or

inflammation requiring continuing Amoxicillin and/or Clindamycin and Keflex,

and MetLife's runaround caused Plaintiff to be prescribed braces, proposed

implants, crowns, and other procedures to be completed by Doctors Arnold and

Allen as of this filing. Plaintiff seeks relief under O.C.G.A. § 16-5-102 for Elder

Physical Abuse caused by Plaintiff's tooth loss, shifting, and continuing

inflammation or infection, and pain and suffering, due to MetLife dental insurance

Bad Faith. Plaintiff contends that since these prescriptions are for infection or

inflammation, and since they all improved Plaintiff's suffering with Clindamycin

being the most helpful, it is likely that infection has been confirmed. Plaintiff is

having intermittent sharp pain at the tooth which adjoined the tooth lost on August

5th, 2022, and he has informed MetLife that he may lose it also due to their

continuing denial of treatment, Plaintiff contends that MetLife's apathy even after

his plea to CEO Michel Khalaf indicates that the now confirmed prescribed loss of

the second tooth will evidence a deliberate decision by MetLife to risk additional

personal injury to Plaintiff. Plaintiff claims in this action, Bad Faith nonpayment of

dental insurance, and MetLife residential mortgage fraud which has caused Plaintiff

continuing losses as of this filing on his MetLife originated VA Home Loan -

MetLife account No. 72822406, by MetLife's now disbarred, residential mortgage

fraud attorney Michael Eddings as shown in Plaintiff's attached Exhibit "F", and

MetLife's Columbus Georgia office manager Alice Daugherty falsely overcharging

the Veteran Plaintiff at Eddings office in Columbus, Georgia on December 28,

2009. Eddings and Daugherty conducted a false VA Home Loan closing in which

they claimed the closing documents were properly notarized, but no notary was

even present, an additional notary violation by MetLife as found by the Comptroller

of the Currency. Plaintiff will show such was a continuing residential mortgage

fraud violation and standard operating procedure by MetLife evidenced by

MetLife's residential mortgage fraud fine of $123.5 million as shown in Plaintiff's

attached Exhibit "G" for violations during the financial crisis from 2008 to 2012,

residential mortgage fraud violations to Plaintiff began on December 28, 2009, and

such overcharges to Plaintiff are ongoing. Since Plaintiff is still being overcharged

on the interest rate of his VA Home Loan which was falsely caused by MetLife as

of this filing, no Statute of Limitations has even begun, Plaintiff's attached Exhibit

"H" is from a news report by NPR of Washington, D.C. in which NPR showed that

except for Navy Federal Credit Union and OWN UP MORTGAGE, Veterans are

being overcharged by lenders on their VA Home Loans, even though no VA

Secretary signature can be found by the National Archives or the VA allowing the

OPTION of lender negotiation, but lenders are violating the benefits guaranteed to

Veterans in return for the Veteran's military service at 65 dollars per month in the

nineteen fifties anyway as reported by NPR. Since Plaintiff lost a fully restored

tooth on or about August 5, 2022, due to MetLife's Bad Faith in paying Plaintiff's

doctors beginning in 2016, and, since Plaintiff was not informed that he was the

victim of Elder Financial Exploitation regarding having a MetLife Life Insurance

policy until August 31, 2022, no claim by Plaintiff is limited by any Statute of

Limitations and even if it were, the 2022 MetLife denial to Jessica Luff at the

Delaware Department of Insurance of Plaintiff being the beneficiary of his life

insurance policy is current Elder Financial Exploitation and intimidation with the

continuing mystery of why these New York authority violations are even being

received by Delaware. Plaintiff has asked Delaware to help consumers by informing

them that MetLife is incorporated in New York, not Delaware.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.    Plaintiff has complied with the Georgia required 60-day notice to MetLife

and the Georgia Insurance Commission requirement 60-day notice, O.C.G.A. § 33-

4-6, for these violations but resolution by MetLife has not been forthcoming even

though Plaintiff stated that he was not at the time seeking more than $68,500.00

where the loss of a fully restored visible tooth causing infection, inflammation, pain,

and shifting, alone, denotes much more monetary loss. Plaintiff in an abundance of

caution also filed a Complaint with ERISA and was assigned a TAS Number, but

the VA does not claim MetLife as a VA-supported insurer although Plaintiff, in

caution, also filed complaints against MetLife with the Department of Veterans

Affairs which resulted in Plaintiff being called by the VA and informed that MetLife

24

is a private company. Apparently, MetLife created a private dental plan and falsely

claimed Plaintiff was an employee of the Department of Veteran's Affairs to

support a false 'group.' U.S. Navy Captain Paul Frost of MOAA, which is the

Military Officers Association of America, informed Plaintiff by email that Delta

Dental, not MetLife, had previously provided a program with the VA which has

expired. Plaintiff has also filed complaints with Delaware because of Delaware's

claim of incorporation and has filed with the Alabama, New York, and Florida

Departments of Financial Services and/or Insurance Commissioners. Since MetLife

uses prerequisites like ERISA for perpetuating frivolous runarounds and refuses to

tell Plaintiff of any other prerequisites as further evasive delay, Plaintiff contends

no further prerequisites should be required of Plaintiff, since Plaintiff notified

MetLife that he was only seeking $68,500.00 at the time, this Complaint could not

even be filed as ERISA because ERISA has to be filed in USDC and USDC has a

threshold of $75,000.00 so Plaintiff's filed Complaint to ERISA should comply.

## UNLAWFUL VIOLATION OF SIGNED SETTLEMENT

10.  MetLife also violated the Florida Settlement Agreement of 2012 cited herein under the Persuasive Authority of Florida Statute § 624.155 by seizing money belonging to a beneficiary, the Plaintiff, as MetLife knew well that since April 1988 when Paul Cecil Carroll passed, MetLife owed Plaintiff or was required to report the life insurance policy to the Georgia Department of Revenue Unclaimed Property Department since Plaintiff lived in Marietta, Georgia. Plaintiff expects to show this honorable Court that MetLife is still seizing millions to billions of dollars belonging to Georgia elder beneficiaries as was shown nationwide by Jeff Atwater who was CFO of Florida on the CBS-TV 60 Minutes report, 'Not Paid-The Life Insurance Industry Under Investigation' and Kevin McCarty who was the Florida Insurance Commissioner, despite MetLife's Florida Settlement Agreement promising to pay the owed beneficiaries or report to State Unclaimed Property Offices. Plaintiff contends that MetLife cannot object to his showing the 14.4-minute CBS TV 60 MINUTES video in Court as hearsay as MetLife has already shown it was not hearsay by signing the Florida Settlement Agreement which made the same allegations as included in the CBS-TV 60 MINUTES episode, MetLife has shown

26

a dead reckoning of 'chase me if you can,' and MetLife's signing the Florida

Settlement Agreement would not have occurred if it were not accurate. WRBL TV

is reporting that there is currently a shortage of jurors in Columbus and Plaintiff

contends that the showing of the CBS TV 60 MINUTES video in Court 'The Life

Insurance Industry Under Investigation' could limit the total trial time needed for

the instant case to one hour plus MetLife's usual frivolous evasive runaround which

MetLife pays for with Plaintiffs' own money. In addition to the 60 MINUTES video

Plaintiff only needs to show six years of dental pain and related health problems

and the loss of a tooth, and the loss of about $37,000.00 by MetLife residential

mortgage fraud. The repeat allegations in Plaintiff's Complaint for MetLife making

Plaintiff chase them have already been adjudicated against MetLife in previous

lawsuits but MetLife continues to tie up jurors and the Courts because MetLife earns

tremendous investment amounts during the average of the seven years the case stays

tied up in the Courts with MetLife's frivolous runaround. Doctor Joseph Arnold in

Columbus, Georgia whom MetLife had informed Plaintiff was 'in-network,'

properly notified MetLife that Plaintiff needed a bridge at the area where infection

27

and/or inflammation were intermittent. Dr. Paris of Columbus treated Plaintiff

successfully for pain at about the same location in 2014, with no problems until

recurrence about 2016 treated by Dr. Gary Wolanek. Dr. Arnold's prescription for

a bridge could possibly have permanently resolved Plaintiff's dental issues had not

MetLife falsely denied Dr. Arnold's prescription. MetLife now claims that the

bridge was denied because a bridge was excluded in Plaintiff's policy if Plaintiff

had a previously missing tooth at the site, but this was a false claim by MetLife,

even the newer dental policy copies that were provided to Plaintiff by MetLife in

2022 did exclude some procedures if a tooth was previously missing at MetLife's

dental policy EXCLUSION #51, but MetLife did not exclude a bridge in any of the

Exclusions concerning previously missing teeth as confirmed when comparing the

medical/dental codes, there were other exclusions such as implants, and other codes

but not codes for a bridge, and Dr. Arnold's prescription was proper. Even if the

bridge had been properly excluded in the original 2016 policy, it would not matter

because MetLife never provided Plaintiff a copy of the original 2016 policy

although they admit he asked numerous times, the most recent request for the 2016

dental insurance copy to the MetLife CEO was answered with a copy of a life

insurance policy for a Dorothy Carroll. After claiming to have provided the original

2016 dental policy, MetLife now says they do not have a copy. MetLife's attempt

to define a bridge as a denture in the newer policy copies that were provided is

prohibited by ADA Codes. WRBL TV has reported that the Columbus Georgia

Courts are currently short in the need for jurors, and Plaintiff is limiting his claims

as Plaintiff is not in this action making any claims for collecting for Bad Faith from

his Metropolitan Life Insurance Policy, Plaintiff is not making any life insurance

claims at all, all MetLife violations in Plaintiff's Complaint such as Elder Financial

Exploitation for not reporting Plaintiff's life insurance policy to the Georgia

Department of Revenue Unclaimed Property Office as Plaintiff lived in Marietta,

Georgia when Paul Cecil Carroll passed away, denials to Columbus, Georgia

dentists, and residential mortgage fraud at disbarred attorney Michael Eddings

Columbus office, occurred in Georgia and since MetLife has business offices in

Georgia, Plaintiff must bring his Complaint in Georgia. Plaintiff at this time also is

not making a claim for treble damages even though MetLife's false advertising of

29

24/7 emergency dental patient care clearly violated O.C.G.A. § 10-1-391(a) as not only the required 30-day certified mailing notice was given but Plaintiff gave Defendant 60 days, however, regarding treble damages if and when an attorney takes over and files an appearance in Plaintiff's case there may be an Amendment.

11.    MetLife violated O.C.G.A. § 16-10-20 by falsely claiming that MetLife had resolved Plaintiff's complaints, this is a violation by MetLife for their filing a false statement to the Georgia Commissioner of Insurance officer James Hartz claiming the complaint filed by Plaintiff had been resolved in elder intimidation.

12.    MetLife violated O.C.G.A. § 16-10-20 by representing to James Hartz of the Georgia Insurance Commission that consumer claims concerning MetLife concealing life insurance policies from beneficiaries must be referred to the State of Delaware for resolution when MetLife knew well that the Delaware, Alabama, Illinois, and Missouri copies of the Settlement Agreement regarding beneficiaries had been rewritten differently from the Florida Settlement Agreement in an attempt to make MetLife the beneficiary of Plaintiff's life insurance policy and ostensibly other consumer's concealed life insurance policies, and as such no MetLife

promised resolution to the Georgia Insurance Commission would occur. In Plaintiff's attached Exhibit "C" and "C-2" from the Florida Settlement Agreement MetLife agreed to the definition of 'beneficiary' that correlates with the Georgia legal definition of 'beneficiary." But, in MetLife's apparent rewrite for Delaware and other States as shown in Plaintiff's Exhibit "I", paragraph d., MetLife managed to get Delaware to tell Plaintiff that he was only the 'insured' leaving only 'MetLife' to receive the benefits from his death as MetLife did not ask for a beneficiary to be named until July 24, 2023, and only then in response to Plaintiff's declaration to law enforcement and insurance commission authorities of MetLife's false claim.

13.    The original, valid, 2012 MetLife Settlement Agreement in the possession of Florida CFO Jimmy Patronis resulted in a synopsis of the CBS-TV 60 Minutes broadcast being placed on the Florida Chief Financial Officer website which was followed by a $5000 donation to CFO Patronis listed on the MetLife site from Plaintiffs' money placed in Trust with MetLife. MetLife claimed in 2020 to have previously ceased giving political contributions, perhaps they are calling the $5000 to Florida CFO Patronis by a different term.

14.      All violations claimed for resolution in this action were committed by MetLife in Georgia, Plaintiff lived in Marietta, Georgia when his father passed in 1988 and Elder Financial Exploitation continues as of 2023 in the denial to Delaware of Plaintiff's claims, the disbarred MetLife attorney Michael Eddings and MetLife's terminated manager Alice Daugherty's false loan closing with the Veteran Plaintiff being overcharged on his VA Home Loan interest rate, as Veteran overcharges were reported by NPR of Washington, D.C., occurred at Eddings' Columbus, Georgia office and originated at Daugherty's Columbus, Georgia MetLife office, and MetLife's Columbus, Georgia denials to Columbus dentists Dr. Joseph Arnold and Dr. David Allison were all conducted at these dentists' offices in Columbus, Georgia.

## PARTIES, JURISDICTION AND VENUE

15.      Plaintiff is an eighty-two (82) year-old Air Force Disabled Veteran residing at 1611 21st Street, Phenix City, Alabama 36867 whose access to businesses is usually found in Columbus, Georgia. Plaintiff is not a lawyer and has graduated *summa cum laude* in Criminal Justice and is now pursuing an additional

32

degree as he has a few remaining paralegal courses, he enrolled for the Fall 2023

paralegal semester but dropped when the course was changed from classroom to

online for the remainder. Plaintiff is a member of the Columbus Georgia Police

Department CLEA Program, formerly the Columbus Police Auxiliary. Plaintiff has

an Associate Degree from Columbus State University in Medical Technology

courses and has probably passed the equivalent of nine years of college. He passed

the Pharmacy College Admission Test and was accepted by the University of

Georgia School of Pharmacy but could not afford the tuition and books because his

life insurance policy was concealed by MetLife, limiting his earnings by about

$70,000 annually since 1975. Since 1981 he has had to bring cases to Court in

Atlanta when his attorney was arrested for shooting at another attorney during

Plaintiff's discovery that the "new" automobile sold to him had previously been

wrecked, this case was brought in Dekalb State Court. In addition to continuing the

required paralegal courses, Plaintiff has completed two of the three college creative

writing courses, has been published in a popular New England Newspaper, and has

won 2nd Place in a U. S. Air Force Short Story contest at Otis Air Force Base.

16.        Plaintiff is a policyholder of a paid-in-full Metropolitan Life Insurance

Company life insurance policy purchased November 18, 1940, and is also a

policyholder of a MetLife Dental insurance policy from about 2015 or 2016 of

which Columbus, Georgia treatment prescription requests have resulted in Bad

Faith non-payment causing tooth loss beginning on or about August 5th, 2022.

Plaintiff has a MetLife-originated VA Home Loan from December 28, 2009, that is

rife with residential mortgage fraud as evidenced by the MetLife $123.5 million

dollar fine against MetLife for residential mortgage fraud and such is costing

Plaintiff overcharges that are continuing in 2023 and ongoing.

17.        MetLife is incorporated under the laws of the State of New York with

its principal place of business in New York City, New York. Service can be

perfected by delivery of a second original to MetLife's registered agent for service,

C.T. Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046-

4805.

18.        Jurisdiction is proper in this Court pursuant to O.C.G.A. § 15-7-4.

19.        Venue is proper in this Court pursuant to O.C.G.A. § 9-11-93.

34

20.     At all times relevant MetLife was an insurance company operating under the authority of the Georgia Insurance Commission and the Georgia Department of Revenue Unclaimed Property Department, therefore, MetLife is governed by O.C.G.A. § 33-23-4 and O.C.G.A. § 44-12-190.

21.     At all times during the course of Plaintiff's being a participant in the MetLife programs shown herein, Plaintiff is entitled to the benefits from the same.

## COUNT I

22.     MetLife, from 2017 to 2022, falsely denied that Plaintiff owned a Metropolitan Life Insurance Policy, and in 2022 apologized for the false statement but still falsely denied that Plaintiff is the beneficiary as Elder Financial Exploitation which has caused Plaintiff hardship and MetLife has thus far cheated Plaintiff's deceased parents out of their hard-earned cotton mill worker earnings of forty dollars per week by making MetLife the beneficiary as claimed by MetLife in 2022 to the Delaware Department of Insurance, MetLife collected about $233,407.01 by Elder financial Exploitation that was due Plaintiff.  Notably, Plaintiff himself picked cotton from 1946 to 1948.

## COUNT II

23.        Delta Dental, using the same information as was provided to MetLife

by Dr. Joseph Arnold, at or about the same time in 2016, provided a treatment

commitment to Dr. Joseph Arnold of or about $808.00 for a bridge, leaving over

one thousand dollars to be paid by MetLife. But MetLife only gave a runaround by

falsely claiming the treatment was excluded, causing Plaintiff elder physical abuse

and tooth loss with a continuing Elder Physical Abuse currently ongoing.

## COUNT III

24.        MetLife's now disbarred attorney Michael Eddings and their MetLife

Columbus Georgia Home Loans Branch Manager Alice Daugherty, at Eddings

office in Columbus, Georgia, falsely claimed to the Veteran Plaintiff that the VA

had authorized a higher interest rate of 5.5%, not the MetLife earlier quoted 4.5%,

for his VA home loan which was originated by MetLife Home Loans, LLC, because

his house cost less than $50,000.00, but, the Atlanta VA has informed Plaintiff that

this was false and FOIAs to the National Archives and the VA support that Atlanta

VA conclusion. MetLife has thus far not produced any signature of any VA

36

Secretary exercising the OPTION of lender negotiation on VA Home Loans but

MetLife used the tactic of lender negotiation to overcharge Veterans anyway as

reported by NPR of Washington, D.C. when NPR reported that only Navy Federal

Credit Union and OWN UP MORTGAGE continued to provide the G.I. Bill of

1944 guaranteed lower Veterans rate of ½ percent less than the FreddieMac rate

which was 5.05% on December 28, 2009 per the Virginia Department of Veteran's

Affairs. MetLife's residential mortgage fraud events caused Plaintiff to not have

access to the CARES ACT which would have lowered his interest rate by almost

fifty percent and this caused Plaintiff an overpayment in excess of $37,000.00, at

$373 per month Plaintiff would have repaid about $131,280.00 for only $49,900.00.

## COUNT IV

25.      Plaintiff shows herein that MetLife violated Elder Financial Exploitation

under O.C.G.A. § 16-5-102, at the closing of his residence in the Columbus,

Georgia office by their now disbarred attorney Michael Eddings along with their

MetLife Home Loans Columbus, Georgia branch manager Alice Daugherty on

December 28, 2009, as residential mortgage fraud confirmed by the $123.5M fine.

37

As against MetLife's attorneys, officers, agents, and assigns:

## COUNT V

26.    Plaintiff contends the evidence shows that MetLife's attorneys and officers

who were the only parties with access to the amounts MetLife quoted as previously

paid to beneficiaries that were quoted in the rewrite of the Florida Settlement

Agreement as MetLife stated these amounts in the change are attempting to change

such definition of 'beneficiary' in the copies of the Settlement Agreements provided

to at least four of the other 22 States who followed Florida's spearheading charges

leading to the Florida MetLife Settlement Agreement. MetLife attempted to falsely

claim that MetLife, not Plaintiff, is the beneficiary of the life insurance policy

Plaintiff's parents purchased from MetLife and such purchase was on November

18, 1940, but finally relented at Plaintiff's urging and submitted to sending Plaintiff

a somewhat concealed form to finally choose a beneficiary on July 24, 2023,

Plaintiff contends he is not 'the insured' and that the amount owed to him as a

'beneficiary' was concealed in Elder Financial Exploitation and then also Elder

Physical Abuse by dental pain and suffering. MetLife's changes were false

38

misrepresentations which were provided to Jessica Luff of the Delaware Department of Insurance including that MetLife was the beneficiary of Plaintiff's life insurance policy, not Plaintiff, even though the original Florida Settlement Agreement making Plaintiff the beneficiary had previously been agreed to and signed by MetLife and the Georgia legal definition of beneficiary confirms that Plaintiff is the beneficiary. Georgia and Florida referred Plaintiff to Delaware after he filed his 60-day notice, ostensibly unaware that MetLife was incorporated in New York and had interfered with resolution by causing Delaware to have different Settlement Agreement copies from the Florida Settlement Agreement which in Delaware was little more than a MetLife advertisement that attempted to make MetLife the life insurance beneficiary, not Plaintiff. Plaintiff has found previous lawsuits against MetLife where MetLife's attorneys claimed a self-employed, not in-network, King v. MetLife Group, Inc., 2;06-cv-0270 (N.D. Al. So. Div.)(2006), dentist was required to first file with ERISA and the Judge even expressed doubt as to such MetLife claim.  MetLife ostensibly made such evasive claims without supporting cases, and MetLife continues such frivolous, arrogant evasions as falsely

claiming that Plaintiff is an employee of the VA. To prevent such frivolous runaround, Plaintiff filed his Complaint with ERISA as TAS Number 202342-01134, JERRY PAUL CARROLL, 3344804072, as MetLife refuses to answer Plaintiff's request for such prerequisites continuing their pattern of runaround and delay. Plaintiff also filed a Complaint with the VA that resulted in the VA calling Plaintiff and stating that MetLife is a private company, Plaintiff also filed with both Delaware and New York and since the violations occurred in Georgia, also filed a 60-day notice to the Georgia Insurance Commissioner that was addressed by James Hartz. Defendant refuses to tell Plaintiff of any further prerequisites MetLife might claim so Plaintiff contends such runaround to a patient suffering a recurring infection should not be permitted.  Plaintiff previously notified MetLife that he was not at that time seeking more than $68,500.00 and Plaintiff is not making any claim for life insurance, even though MetLife had made about $233,407.01 after concealing Plaintiff's life insurance for an additional six years, and causing Plaintiff's needed dental work to go to possibly more than $30,000.00 by Elder Abuse and Elder Financial Exploitation, and causing him to have to pay more than

$37,000.00 in VA Home Loan residential mortgage fraud overcharges as reported

by NPR concerning VA Home Loans, MetLife's residential mortgage fraud fine

resulted in Plaintiff's VA loan being serviced by Carrington Mortgage Services who

was fined $18 million for concealing the CARES ACT from Plaintiff and others

cost Plaintiff more than $37,000.00. However, MetLife may feel that Plaintiff is not

asking for enough by not filing the case in United States District Court as a Class

Action and spending the few months he has left, if that, trying to help the other

elderly beneficiaries collect on life insurance policies they are owed by MetLife

according to CBS 60 MINUTES, Kevin McCarty, Jeff Atwater, and Ken Miller,

and get the medical and dental help MetLife has denied in expecting MetLife might

never have to pay it and helping other Veterans who MetLife also overcharged on

VA Home Loans. MetLife has failed to produce any documentation of the OPTION

of lender negotiation ever being signed for by any VA Secretary. Life insurance is

a State issue, not Federal, and any effort by MetLife to Remove the instant case to

United States District Court would evidence that MetLife believes Plaintiff is due

more than $68,500.00 if he prevails as there is a $75,000.00 USDC threshold, that

MetLife believes the FDIC should extend protection to life insurance policy consumers who fall for the self-sustaining retirement fund MetLife sales pitch, and Plaintiff should in good conscience encourage the forming of a non-profit alliance made up of Life Insurance companies who were not charged with concealing life insurance policies, Navy Federal Credit Union, OWN UP mortgage, and others not found to be concealing life insurance money owed or overcharging Veterans on VA Home Loans, and who pledge and deliver honesty in transactions. MetLife knows that Plaintiff will have a heavy burden to learn the current USDC Court Rules and Procedures and extra work not needed by Plaintiff who has worked daily since August 22, 2022, on a case where it seems MetLife will spend Plaintiff's own money from the TRUST to provide frivolous answers that they know are not even reasonable and already adjudicated against MetLife, for the purpose of intimidation which is prohibited by Georgia Elder Financial Exploitation and Elder Physical Abuse law. Plaintiff has a moral obligation from the learning of MetLife's failure to provide life insurance still being sold as an investment for the future that would become self-sustaining to Danny Bird and Tim Butterfield but resulting in

42

MetLife's Bad Faith, Plaintiff has to plead with the FDIC to extend protections to prevent another catastrophe like the bank failure of 1933 as these consumers are relying on MetLife for retirement, the States have stated they need the help of the National Government regarding life insurance regulation. MetLife has apparently rewritten a frivolous version of the Florida Settlement Agreement and provided it to the Delaware Department of Insurance and is benefiting from other States telling their citizens to complain to Delaware.

### Pre-Judgment Interest

27.    Plaintiff is entitled to recovery of pre-Judgment interest in accordance with law and equity as part of his damages herein, and Plaintiff specifically sues for recovery of pre-Judgment interest from the date of the occurrence made the basis of this suit until the date of Judgment herein, as provided by law and equity.

### JURY DEMAND

28.    Plaintiff demands a trial by Jury herein.

### PRAYER FOR RELIEF

43

WHEREFORE, the Plaintiff, Jerry Paul Carroll prays and respectfully demands the following:

(A)    That summons issue and service be perfected upon the Defendants requiring Defendants to be and appear in this Court within the time required by law and to answer this Complaint;

(B)    Judgment against Defendants for; actual damages in an amount to be shown at trial; pre-Judgment and post-Judgment interest; punitive damages and attorney's fees; costs of suit; and all other relief to which Plaintiff may be entitled;

(C)    That Plaintiff Carroll be awarded special damages from the Defendants for his past, present, and future dental/medical expenses and past present, and future loss of income and earnings in such an amount as may be shown by the evidence and proven at trial;

(D)    That Plaintiff Carroll be awarded compensatory damages from Defendants for his physical and emotional pain and suffering, permanent disfigurement, physical impairment, pecuniary and non-pecuniary damages,

44

suffering from his injuries remaining untreated due to Defendants' runaround which correlate with the impairments suffered since the date of injury, needed accommodations and loss of enjoyment of life, in such amounts as may be shown by the evidence and determined by the jury in their enlightened conscience;

(E)    That Plaintiff Carroll be granted a trial by jury of this cause on all issues so triable;

(F)    That Plaintiff Carroll be reimbursed for his expenses that occurred by the Defendants' negligence and wantonness;

(G)    That the Defendants be charged with all Court costs attributable to this action and such other costs reasonably incurred in the prosecution and trial of this case;

(H)    That the Defendants be denied any applicable offsets as equitable relief;

(I)    Together with damages for Plaintiff having given Defendants more than 60 days' notice by certified mail to resolve this matter, which was falsely claimed resolved by MetLife, and;

(J)      That the Plaintiff be granted all relief prayed for in this Complaint and such other and further relief as this Court deem just and proper.

This _____ Day of _____, 2023.

Respectfully submitted,

_Jerry Paul Carroll_

Jerry Paul Carroll

Plaintiff

1611 21st Street
Phenix City, AL 36867
334 480 4072, landline-no text, 850 240 7460 cell
jaybyrdcarroll@gmail.com

# PLAINTIFF'S EXHIBIT

## "A"



PLAINTIFF'S EXHIBIT
A

Metropolitan Life Insurance Company
PO Box 336
Warwick RI 02887-0336

**MetLife**

**U.S. Retail Life** Operations

Inquiry for Verna Ledbetter Carroll

May 15, 2017

Jerry P. Carroll
1611 21st St
Phenix City AL 36867

 View and update your account at
www.eservice.metlife.com

## Dear Jerry P. Carroll,

### Why we're contacting you

Thank you for completing the MetLife Identification Questionnaire and returning it to us.

### What you need to know

We have completed our investigation of the possible match using the information you provided to us. Unfortunately, our review has shown that the identifying information you provided does not match up with the information on our policy records. Therefore, we have concluded that there are no individual life insurance policies for this person on the MetLife policy files.

### We're here to help

If you have additional information or documentation of a MetLife Policy, please email us at MetLifePolicyFinder@MetLife.com or you can reach us at 1-800-638-5000. Our Customer Service Center is open Monday through Friday between 9 a.m. and 6 p.m., Eastern Time.

Sincerely,

*Kimberly Alvarez*

Kimberly Alvarez
Life Disbursements and Correspondence Unit

Enclosure

FAMILY REUNION
Page 1 of 1

# PLAINTIFF'S
# EXHIBIT
# "B"

Metropolitan Life Insurance Company
PO Box 7108, Troy, MI 48007-7108

 **MetLife**

Policy: 133430340
Insured: JERRY P CARROLL
Owner: JERRY P CARROLL
Date: August 31, 2022

JERRY P CARROLL
310-A ASHURST
EAST TALLASSEE, AL 36023
Email: jaybyrdcarroll@gmail.com



Dear JERRY CARROLL:

We are writing in response to your recent communication with the Better Business Bureau, regarding the above policy. We apologize for the concern this has caused you. At MetLife, we strive to provide excellent service to all our customers and are sorry to learn that we fell short of that goal regarding in this instance. We appreciate that you have brought this matter to our attention as it affords us the opportunity to improve our overall customer service.

In your recent correspondence to the Better Business Bureau, you noted that your parents had a life insurance policy on you since the 1930's, but you were told that we do not have a record of the policy.

Policy 133430340 was issued November 18, 1940, as a *15 Year Payment Life* plan of insurance with a face amount of $311.79. The owner and insured are Jerry P. Carroll. The policy was paid in full after premiums were paid to November 18, 1955. As of August 31, 2022, the cash value is $1,113.09 and the death benefit is $1,345.09. We will be sending an Acknowledgement of Insurance under separate cover for your records.

We have forwarded your questions and concerns regarding your dental plan to our Dental Department; you will be receiving a response from them under a separate cover.

We hope this information has been helpful in answering your questions.

If you have any further questions, please contact our Customer Service Center at 1-833-642-1007 Monday through Friday between 9 a.m. and 6 p.m., ET.

Sincerely,
Patricia Salerno
Customer Support, Insurance Business Processing Services

Insurance and annuities are issued by Metropolitan Life Insurance Company, New York NY 10166 ("MLIC"), its affiliates or by unaffiliated insurers. Variable products are distributed by MetLife Investors Distribution Company ("MLIDC") (member FINRA). MLIC and MLIDC are MetLife companies.

# PLAINTIFF'S

# EXHIBIT

# "C"

PLAINTIFF'S
EXHIBIT
10

# SETTLEMENT AGREEMENT

This Settlement Agreement is entered into by and between the State of Florida Department of Financial Services ("DFS"), and MetLife, Inc., Metropolitan Life Insurance Company, New England Life Insurance Company, MetLife Insurance Company of Connecticut, General American Life Insurance Company, Metropolitan Tower Life Insurance Company, MetLife Investors Insurance Company, First MetLife Investors Insurance Company, MetLife Investors USA Insurance Company, and Delaware American Life Insurance Company ("MetLife"), (collectively, DFS and Respondent shall be referred to as "Parties") as of this 23rd day of April 2012.

NOW, THEREFORE, the Parties agree as follows:

## I. DEFINITIONS

Solely for the purposes of this Agreement, capitalized terms have the meaning set out below:

1.  **"Agreement"** means this Settlement Agreement entered into by DFS and Respondent.

2.  **"Annuity Contract"** means a fixed or variable annuity contract, other than a fixed or variable annuity contract issued (1) in connection with an employment-based plan subject to the Employee Retirement Income Security Act of 1974 or (2) to fund an employment-based retirement plan where the life insurer is not committed by the terms of the annuity contract to pay death benefits to the beneficiaries of specific plan participants.

3.  **"Audit"** means the unclaimed property audit that Verus has been conducting of Respondent, on behalf of DFS, which is being resolved pursuant to this Agreement.

PLAINTIFF EXHIBIT

'C' Pg-

4.      **"Beneficiary"** means the person or entity entitled to receive Proceeds from a life insurance policy (including any group life insurance certificate issued thereunder), Annuity Contract, or retained asset account.

5.      **"Respondent"** means MetLife.

6.      **"Death Master File"** or **"DMF"** means a version of the United States Social Security Administration's Death Master File or any other database or service that is at least as comprehensive as the United States Social Security Administration's Death Master File for determining that a person has reportedly died. The Death Master File must include at least one full version of the file and may include update files.

7.      **"Dormancy Period"** means the period of years provided for by the UP Laws upon the expiration of which the Proceeds must be reported and remitted to DFS.

8.      **"Duration of the Audit"** means the period concluding upon completion of all processing related to the Final Unclaimed Property Report pursuant to the terms of this Agreement.

9.      **"High Age Industrial Policies"** means in-force Industrial life insurance policies, other than those in a nonforfeiture reduced paid up status, issued (1) prior to January 1, 1930, or (2) between January 1, 1930 and December 31, 1939 to insureds who have reached the attained age of 90 years; provided that if the Respondent enters into any other regulatory settlement based upon a younger attained age, such younger age shall be deemed to be incorporated herein without the need for formal amendment.

10.      **"Industrial RPU Policies"** means in-force Industrial life insurance policies in a nonforfeiture reduced paid up status.

# PLAINTIFF'S
# EXHIBIT
# "D"

PLAINTIFF'S
EXHIBIT

'D'



*The following is a script from "Not Paid" which aired on April 17, 2016. Lesley Stahl is the correspondent. Rich Bonin, producer.*

When you take out a life insurance policy, you pay premiums in the expectation that when you die your spouse or your children will receive the benefit. But audits of the nation's leading insurance companies have uncovered a systematic, industry-wide practice of not paying significant numbers of beneficiaries.

In a little-known series of settlements, 25 of the nation's biggest life insurance companies have agreed to pay more than $7.5 billion in back-death benefits. However, about 35 insurance companies have not settled and remain under investigation for not paying when the beneficiary is unaware there was a policy, something that is not at all uncommon.



PLAINTIFF'S
EXHIBIT
'D' pg 2



GOLD MINE OF MONEY THAT BELON

Commissioner Mike Rothman

MN DEPARTMENT OF COMMERCE

1:23 / 3:34



PLAINTIFF'S
EXHIBIT

'D' pg 3




PLAINTIFF'S
EXHIBIT
'D' pg 4



# PLAINTIFF'S
# EXHIBIT
# "E"

PLAINTIFF'S
EXHIBIT

`E`

Photos from iPhone7 show Plaintiff's continuing shifting of teeth
causing pain and infection or inflammation due to MetLife's failure
to provide Dr. Joseph Arnold's prescription for a bridge, also causing
the loss of Plaintiff's tooth shown by the gap at the right of the picture
Top photos on each page : Wed July 5, 2023; Bottom: May 10, 2023







PLAINTIFF'S
EXHIBIT

'E' p92







# Why is it important to Replace Missing Teeth?

- Chewing is the first step in the digestive process, allowing you to break down food particles both mechanically and chemically. Without healthy teeth (and the underlying gums and bone to support them), you **cannot chew properly**. Inadequate chewing reduces your body's ability to absorb the appropriate amount of nutrients from food which can directly lead to malnutrition and indigestion.

- Teeth also play an essential role in speaking. Missing teeth can lead to **speech defects or impediments** that can lead to difficulties communicating in your career and social life.

- A missing tooth can affect the adjacent teeth, the gum tissues, and the jawbone itself. When a tooth is lost, the neighboring teeth can shift and move into the newly opened space. This shifting often leads to changes in the bite between the upper and lower jaws. Bite changes can lead to TMJ disorder, muscle pain and headaches.

- A missing tooth also leads to **gum recession** on the neighboring teeth. As the gums recede, they expose the delicate roots of those teeth, making them susceptible to cavities and sensitivity.

- The purpose of the jawbone is to hold teeth. When teeth are missing, the jawbone slowly shrinks over time in a process we call resorption. It becomes narrower and shorter, which also means it becomes weaker. Those who have lost all of her teeth are at greater risk for jawbone fractures.



 | | | | |
|---|---|---|---|
| 06/01 | Metlife | Ins Paymnt Carroll, Jerr | 52.49 |
| 06/05 | Automobile Club | Inspremeft Jerry Carroll | 56.33 |
| | | Total Withdrawals | $108.82 |

# Thank You For Your Banking Business

PLAINTIFF'S EXHIBIT 'B' pg 4

**Go paperless and avoid possible mail delays with Online Statements and other account documents. Scan this code for details.**

Easy Steps to Balance Your Account

Write here the amount shown on | Checking Account | $

4a List any checks, payments, transfers or other withdrawals from your account that are not on this statement

Check

**Carrington**
mortgage services, llc
NMLS ID #7600

P.O. Box 5001
Westfield, IN 46074

# Monthly Mortgage Statement

0045987  01 AB 0.507  **AUTO  T6 0 9607 36867-434511  -C01-P46032-I



JERRY P CARROLL
1611 21ST ST
PHENIX CITY  AL 36867-4345


PLAINTIFF'S
EXHIBIT
'E' P9 5

| | |
|---|---|
| Statement Date | 07/01/23 |
| Account Number | 4000359850 |
| **Amount Due** | **$279.85** |
| Due Date: | 08/01/23 |

If payment is received after 08/16/23, a $11.19 late fee will
be charged.

**Contact Us:**
📞 800-561-4567   📠 800-486-5134
🖥 www.CarringtonMortgage.com

## Account Information

Home financing available
Contact us at (844) 833-2685
www.CarringtonHomeLoans.com

Property Address:
1611 21ST STREET          Interest Rate: 5.50%        Modification Date: N/A
PHENIX CITY  AL 36867     Prepayment Penalty: No      Maturity Date: 01/01/2040

## Explanation of Amount Due

| | |
|---|---|
| Principal: | $113.40 |
| Interest: | $166.45 |
| Escrow: | $0.00 |
| (Taxes and/or Insurance)* | |
| **Reg. Monthly Payment:** | **$279.85** |
| Overdue Payment: | $0.00 |
| Total Fees Charged: | $0.00 |
| **Total Amount Due:** | **$279.85** |

## Current Loan Balances

| | |
|---|---|
| Principal Balance*: | $36,315.79 |
| Escrow Balance: | $0.00 |
| Past Due Balance: | $0.00 |
| Deferred Balance(s): | N/A |
| Buydown Balance: | N/A |
| Partial Claim: | N/A |
| Negative Amortization: | N/A |
| Unapplied Funds: | $0.00 |

* Your current Principal Balance is not a payoff quote.
See page 3 for Loan Payoff Information.

## Past Payment Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $112.89 | $669.64 |
| Interest | $166.96 | $1,009.46 |
| Escrow (Taxes and/or Insurance)* | $0.00 | $0.00 |
| Fees and Charges | $0.00 | $0.00 |
| Unapplied Funds | $0.00 | $0.00 |
| **Total** | **$279.85** | **$1,679.10** |

* Please see page 3 of this statement for additional information.

# PLAINTIFF'S
# EXHIBIT
## "F"



ADVERTISEMENT

# Prominent Columbus attorney disbarred in Supreme Court decision



Prominent Columbus attorney disbarred in Supreme Court decision
By WTVM News Staff
Published: Aug. 9, 2022 at 8:48 PM EDT

COLUMBUS, Ga. (WTVM) - A prominent Columbus attorney is now disbarred from practicing law in the state of Georgia.

Attorney Michael Eddings and his wife Cythinia say they believe the judge to have read the letter aloud in open court, in front of his client and their family, was meant to embarrass him.

Eddings says they were all waiting for court to start at 9 a.m. Forty-five minutes later, the judge delivered the news by reading the letter from the Georgia Bar Association.

In a 22-page letter, it cites three separate violations by Eddings, where he contacted witnesses in cases without consent from their lawyers -- two

AD

# PLAINTIFF'S
# EXHIBIT
## "G"

9/10/22, 11:12 AM
MetLife unit to pay $123.5 mln for alleged mortgage fraud | Reuters

Discover Thomson Reuters  •••

Directory of sites    Login    Contact    Support

 **REUTERS**       **World**   **Business**   **Markets**   **Breakingviews**   **Video**   **More**                    



**U.S. LEGAL NEWS**     FEBRUARY 25, 2015 / 2:17 PM / UPDATED 8 YEARS AGO

# MetLife unit to pay $123.5 mln for alleged mortgage fraud

By Lindsay Dunsmuir                                         **2 MIN READ**     f    𝕏

WASHINGTON (Reuters) - MetLife Home Loans LLC will pay $123.5 million to resolve accusations of mortgage lending violations by the Federal Housing Administration, the U.S. Department of Justice said on Wednesday.

The department said in a statement the unit, a subsidiary of MetLife Inc, knowingly violated the False Claims Act between September 2008 and March 2012 by originating and underwriting mortgage loans insured by FHA, a "substantial percentage" of which it already knew did not meet the underwriting requirements.

*Plaintiff's closing December 2009*

https://www.reuters.com/article/metlife-usa-loans/metlife-unit-to-pay-123-5-mln-for-alleged-mortgage-fraud-idUSL1N0VZ5E820150225                    1/3

# PLAINTIFF'S
# EXHIBIT
# "H"

PLAINTIFF'S EXHIBIT

"And they're veterans," Boyaggi says. "To sit there and think to yourself that this person who served our country is now going to get taken advantage of and they had no clue, they had no idea."



**CORONAVIRUS UPDATES**

Housing Boom: Sales of Million-Dollar Homes Double

The Own Up study examined federal lending data for the top 20 lenders for VA loans in the U.S., and looked at the annual percentage rate the companies offered on all the loans they made in 2019.

"When we looked at the spread, candidly, we were quite surprised that it was as wide as it was," Boyaggi says. "The best lenders and the worst lenders were so far apart from one another."

The study found Navy Federal Credit Union offered the lowest rates. At the high end was a lender called New Day USA, which sponsors the Army-Navy football game. New Day's TV ads, featuring plenty of American flags, say that it wants to "do whatever is best for the individual service person."

But the study found on average, New Day's APR was 1.25 percentage points higher compared to Navy Federal. Over the life of a $300,000, 30-year loan, that's more than $70,000 in additional interest payments.

# Plaintiff's

# Exhibit

# "I"



PLAINTIFF'S EXHIBIT 1

EXECUTION DRAFT

*Reads Like a MetP Advertisement*

asset accounts of all of the MetLife affiliated companies for all fifty states, and the Company has to date identified approximately $96 million to be paid to Beneficiaries from these matches, and over $16 million to be paid to the states as unclaimed property; and

**WHEREAS**, Company denies any wrongdoing or any violation of the Unclaimed Property Laws or the Insurance Laws of any of the Signatory States or any other applicable law, but in view of the complex issues raised and the probability that long term litigation and/or administrative proceedings would be required to resolve the disputes among the Parties hereto, the Company and the Signatory States desire to resolve differences between the Parties as to the interpretation and enforcement of the Insurance Laws and the Unclaimed Property Laws and all claims that the Departments have asserted or may assert with respect to the Company's claim settlement practices based on the use, or lack of the use, of the DMF or any other source or record maintained by or located in the Company's records regarding the death of an Insured, Accountholder, Annuity Contract Holder, or annuitant;

**NOW, THEREFORE**, the Parties agree as follows:

1. **Defined Terms.** Those capitalized terms in this Agreement not otherwise defined in the text shall have the following meanings:

   a. **"Annuity Contract"** means a fixed or variable annuity contract other than a fixed or variable annuity contract issued to fund an employment-based retirement plan where MetLife is not committed by the terms of the annuity contract to pay death benefits to the beneficiaries of specific plan participants.Nothing in this Agreement shall be construed as an admission of any party's position as to the preemptive effect of the Employee Retirement Income Security Act of 1974, as periodically amended, on state laws as applied to employment based plans.

   b. **"Annuity Contract Owner"** means the owner of an Annuity Contract.

   c. **"Accountholder"** means the owner of a "Retained Asset Account."

   d. **"Beneficiary"** or **"Beneficiaries"** means the party or parties entitled or contingently entitled to receive the death benefit proceeds from a "Life Insurance Policy" (hereafter defined), an Annuity Contract, or the proceeds of a "Retained Asset Account" (hereinafter defined).

   *Not Florida definition*

   e. **"Date of Death"** means the date on which an Insured, Accountholder, Annuity Contract Owner, or annuitant identified by the DMF or any other source or record maintained or located in the Company's records has died.

   f. **"Date of Death Notice"** means the date the Company first has notice of the Date of Death of an Insured, Accountholder, Annuity Contract Holder, or annuitant. For purposes of this Agreement and subject to Schedule B hereto, notice shall include, but not be limited to information provided in the DMF or an equivalent database containing the same information as the DMF, or any other source or

- 3 -

*MetLife's attorneys cannot rewrite completed insurance contracts.*

# IN THE STATE COURT
# MUSCOGEE COUNTY
# STATE OF GEORGIA

GEORGIA, MUSCOGEE COUNTY
SUPERIOR / STATE COURT
FILED IN OFFICE

AUG 3 0 2023

*12:15 pm    CR*
DEPUTY CLERK

Air Force Veteran Carroll Jerry Paul Carroll, Age 82,

    Plaintiff,

Civil Action File No._____

SC 2023 CV 00 1022

vs.

Metropolitan Life Insurance Company a/k/a,
BRIGHTHOUSE LIFE INSURANCE COMPANY a/k/a/,
MetLife Services and Solutions, LLC a/k/a/,
Metropolitan Dental Insurance a/k/a,
MetLife Group, Inc. a/k/a,
MetLife, Inc. a/k/a,
New England Life Insurance Company a/k/a/,
MetLife Insurance Company of Connecticut a/k/a,
General American Life Insurance Company a/k/a,
Metropolitan Tower Life Insurance Company a/k/a,
MetLife Investors Life Insurance Company a/k/a,
First MetLife Investors Life Insurance Company a/k/a,
MetLife Investors USA Insurance Company aka,
Delaware American Life Insurance Company a/k/a,
MetLife Home Loans LLC,
      successor by merger to MetLife Bank, N.A.,

and their attorneys, officers, agents, and assigns,

    Defendants.

_____ /

JURY TRIAL DEMANDED

MetLife

## **PLAINTIFF'S FIRST REQUESTS FOR ADMISSIONS OF MATTERS**

COMES NOW, Plaintiff JERRY PAUL CARROLL, in the above-styled action, and requires
Defendant MetLife to answer under oath the following Requests for Admissions within 45 days
from the date of service of these Requests pursuant to O.C.G.A. § 9-11-36(a)(2) and a copy of the

1

answers to be furnished to Plaintiff or Plaintiff's attorneys in the event of appearance. Defendants are advised to not go to the expense of arranging depositions or any discovery until all of Plaintiff's Requests for Admissions, Plaintiff's Interrogatories, and Plaintiff's requests for Production of Documents have been fully and completely answered by Defendants as Plaintiff will not answer any deposition questions until receiving all answers from Defendants at least 30 days before any discovery from Plaintiff is scheduled, the Georgia Supreme Court does not require Plaintiff to provide deposition answers or any discovery if MetLife who is being asked first does not first provide complete answers to Plaintiff.

**NOTE A:** In reply to these Requests for Admission, your answer should specifically admit or deny the request, or set forth in detail the reasons why the request cannot be truthfully admitted or denied. Any denial shall fail to meet the substance of the requested admission, and when good faith requires that you qualify your answer or deny only a part of the matter of which an admission is requested, you shall specify so much of it as is true and qualify or deny the remainder, O.C.G.A. § 9-11-36(a)(2).

**NOTE B:** As the answering party you may not give lack of information or knowledge as a reason for failure to admit or deny unless reasonable effort has been made and the information known or readily obtainable and available to the Defendant is sufficient to enable the Defendant to admit or deny the matter, O.C.G.A. § 9-11-36(a)(2).

**NOTE C:** If the Defendant considers that a matter requested presents a genuine issue for trial, this alone does not constitute grounds for an objection. Mixed questions of law and fact, opinions, and genuineness of documents are all legitimate subjects of Requests for Admission. O.C.G.A. § 9-11-36(a)(1)(2).

## DEFINITIONS

As used herein, the terms listed below are defined as follows:

1. **"Person"** means any natural person, corporation, partnership, proprietorship, association, organization, group of persons, or any governmental body or subdivision thereof.
2. **"Subject Incident"** means the loss of a visible tooth in August 2022, the admitted Elder Financial Exploitation concealment of the beneficiary Plaintiff's life insurance policy owed,

2

in 2022, and the overcharge to the Veteran Plaintiff of the interest rate of his VA Home Loan which is continuing as of this date.

3.  **"You" "Your" or "MetLife"** means Defendant METLIFE et al.

With Plaintiff's filing of his Requests for Admissions, Requests for Production of Documents, and Plaintiff's First Interrogatories, Plaintiff reminds Defendant that Defendant must fully answer all Admissions, Requests for Production, and Interrogatories, before Plaintiff will provide any Deposition answers, to schedule such discovery without first answering Plaintiff's earlier requested discovery will be an already disclosed expense from Defendant's Court Reporter and other expenses already cautioned.

## REQUESTS FOR ADMISSION

1.  Admit that you are indebted to Jerry Paul Carroll for a life insurance policy that his parents began paying Metropolitan Life Insurance Company for on November 18, 1940, and for the loss of one and possibly two adjoining teeth, one of which was lost on or about August 5th, 2022, due to your delay as Dr. Gary Wolanek requested a MetLife re-treatment commitment from you in 2016 or 2017 because of an infection or inflammation.

2.  Admit that you have overcharged Plaintiff an amount of 5.5% VA Home Loan interest since December 28, 2009, by your manager Alice Daugherty and your now disbarred attorney Michael Eddings claiming that the VA approved such when MetLife had previously, prior to the closing, quoted Plaintiff a VA interest rate of only 4.5%, and MetLife claimed the change was because the house being purchased by Plaintiff was approved by the VA for houses priced under $50,000.00, and that since February 2023 when MetLife was challenged by Plaintiff to produce any documentation of the VA Secretary signing any document allowing the OPTION of changing from traditional VA lower interest rates to the lender negotiation of VA interest rates, you have not produced such document.

3.  Admit that your manager Alice Daugherty and now disbarred attorney Michael Eddings conducted a closing of Plaintiff's VA Home Loan by both falsely pretending there was a notary public at the closing and that MetLife's Alice Daugherty who selected now disbarred Attorney Eddings, and Daugherty and Eddings, claimed to have properly

3

conducted Plaintiff's VA Home Loan closing falsely claiming a notarized signature regarding Plaintiff by their notary public James Robinson, Jr.

4. Admit that even though you signed a Settlement Agreement with the State of Florida in which you pledged to attempt to find and pay beneficiaries in 2012, you still told Plaintiff that you had no policy for him in 2017 as shown in Plaintiff's Exhibit "A" until he filed a Bad Faith Complaint with the State of Florida in 2022.

5. Admit that until Plaintiff filed a Bad Faith Complaint against you, you have no tracking number or evidence that you ever provided Plaintiff a 2016 copy of his dental insurance policy, but you admitted that he asked for a copy of his policy numerous times, and strangely, you then sent him a copy of a newer policy, but a few days later sent him an entirely different copy, and you still have not provided him his requested original 2016 policy copy, only newer copies, and you have now changed your story to claiming you have no copy of plaintiff's original 2016 dental insurance policy.

6. Admit that there is no act on the part of anyone, other than Defendant MetLife, that in any way contributed to the subject incidents as specifically stated above.

7. Admit that at the time of the subject incidents, as stated above, Defendant MetLife had signed a Florida Settlement Agreement in 2012 in which MetLife promised to attempt to find beneficiaries such as Plaintiff Carroll and pay him as a beneficiary of a Metropolitan Life Insurance policy and that the same information questionnaire was used to deny and then later admit Plaintiff had a life insurance policy.

8. Admit that MetLife and MetLife's attorneys who would have been the first to know the amounts of MetLife's payments to beneficiaries as shown in the 2012 Settlement Agreement copies provided to Illinois, Delaware, Alabama, and Missouri, rewrote the 2012 Florida Settlement Agreement which had defined Plaintiff as a beneficiary, in order to defraud Plaintiff and falsely claim to Jessica Luff of Delaware that Plaintiff was the 'insured' and not a 'beneficiary' which made MetLife the beneficiary.

9. Admit that, within a few weeks after the CBS-TV 60 Minutes report "Not Paid-The Life Insurance Industry Under Investigation" aired against MetLife in April 2016, the Florida

4

authorities who made the 'not paid' allegations against MetLife were no longer Florida Insurance Commissioner or Florida Chief Financial Officer.

10. Admit that MetLife Dental has told at least one dentist's insurance coordinator to first request a pre-treatment estimate from Delta Dental before sending a request to MetLife.


## PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS AND NOTICE TO PRODUCE

TO:  MetLife

You are requested pursuant to O.C.G.A. § 9-11-34 to produce the documents indicated below for inspection and copying by the Plaintiff at 1611 21st Street, Phenix City, Alabama 36867 within 30 days from the date of this request.

You are further requested pursuant to O.C.G.A. § 24-10-26 to produce these documents at any deposition, mediation session, hearing or trial in this case.


**Request No. 1**: You are requested to produce all of the 2016 income tax returns filed with the Internal Revenue Service showing an accounting of the unclaimed money for Georgia beneficiaries of MetLife Life Insurance policies held in MetLife's investment accounts or disbursed to MetLife officers or stockholders including the policy of Plaintiff purchased on November 18, 1940, by his parents, Paul Cecil Carroll and Verna Ledbetter Carroll, and paid in full by his parents in 1955 and including all income tax returns for 2021 of CEO Michel A Khalaf and Susan Correnti, and Steven Kandarian for 2019.


**Request No. 2**: You are requested to provide documentation of all purchases from MetLife in 1966 and 1967 by Jerry Paul Carroll and his wife Montie Jane Carroll of 8B Hilton Court and then 2705 17th Avenue, both in Columbus, Georgia. The MetLife Insurance Agent's name was Groover.

5

**Request No. 3**: At Plaintiff's VA Home Loan closing on December 28, 2009, MetLife Home Loans manager Alice Daugherty and now-disbarred attorney Michael Eddings told Plaintiff that the VA had approved a 5.5% interest rate because his house was under $50,000.00. In March of 2010, an officer at the Atlanta VA Regional Office home loan department told Plaintiff this was not true. In April of 2023 National Public Radio of Washington, D.C., NPR, published an article and evidence that Veterans have for some time been overcharged on the VA interest rate by lenders except for Navy Federal Credit Union and Own Up Mortgage. Neither Lynnette Riva or Ellie Velmaris of the VA home loan department, nor the VA, nor the U.S. National Archives, have produced any requested VA documentation by FOIA to support that any VA Secretary ever signed the 'OPTION' allowing lender negotiation of VA Home Loan interest rates. You are requested to provide any and all documentation from the VA showing that the VA approved charging a higher interest rate in December 2009 if the house was priced under $50,000.00, and to produce any documentation of a signature from any VA Secretary allowing the lender negotiation 'OPTION" as NPR in Plaintiff's Complaint shows that Veterans have been overcharged by lenders except by Navy Federal Credit Union and OWN UP MORTGAGE despite the 'OPTION' never being allowed as no signature from any VA Secretary exercising the 'OPTION' has been provided.

**Request No. 4**: You are requested to provide all documents utilized by MetLife in any way in responding to Plaintiff's First Interrogatories to Defendant MetLife.

**Request No. 5**: You are requested to provide the name, current address, and telephone number of all persons who prepared the Settlement Agreement documents that Delaware, Illinois, Missouri, and Alabama were provided which included MetLife's quoting of amounts paid to beneficiaries as claimed by MetLife, or any similarly known document designation reported by the NAIC of the 22 States that joined Florida upon finding that Life Insurance companies were probably using the 'death master file' to seize money belonging to beneficiaries and violate State Unclaimed Property Law.

**Request No. 6**. You are requested to provide the original and complete Metropolitan Life Insurance policy purchased by Plaintiff's parents on November 18, 1940, together with all updates such as memos on collecting the premiums from Verna Ledbetter Carroll from 1945 to 1955 at her four addresses during that period when including Post Office Box 306, East Tallassee, Alabama.

6

**Request No. 7** You are requested to provide all documentation of all completed college medical courses taken by MetLife's Dental insurance department worker Susan Correnti including the grade she received for that course.

**Request No. 8** You are requested to provide all copies of MetLife letters to Dr. Gary Wolanek informing him of his sending Plaintiff's pre-treatment request to the wrong MetLife department and later informing him that MetLife needed more information from him.

**Request No. 9** You are requested to provide all documentation legally supporting your claim that dentists must first pursue the primary insurer before requesting a pre-treatment estimate from you even if the patient has an infected tooth and in support of your claim that there is a lawful determination of any dental insurer claim of being secondary.

This the _30th_ day of _August_ 2023.

Jerry Paul Carroll
Plaintiff

1611 21st Street

Phenix City, Alabama 36867

334 480 4072 landline, 850 240 7460 cell/text

jaybyrdcarroll@gmail.com

7

IN THE STATE COURT
MUSCOGEE COUNTY
STATE OF GEORGIA

Air Force Veteran Jerry Paul Carroll, Age 82,

    Plaintiff,

vs.

Metropolitan Life Insurance Company a/k/a,
BRIGHTHOUSE LIFE INSURANCE COMPANY a/k/a
MetLife Services and Solutions, LLC a/k/a
MetLife   Dental Insurance, a/k/a,
MetLife Group, Inc. a/k/a/,
MetLife, Inc. a/k/a,
New England Life Insurance Company a/k/a,
MetLife Insurance Company of Connecticut a/k/a,
General American Life Insurance Company a/k/a,
Metropolitan Tower Life Insurance Company a/k/a,
Metropolitan Investors Life Insurance Company a/k/a,
First MetLife Investors Life Insurance Company a/k/a,
MetLife Investors USA Insurance Company a/k/a/,
Delaware American Life Insurance Company a/k/a,
MetLife Home Loans, LLC,
        successor by merger to MetLife Bank, N.A.,

and their attorneys, officers, agents, and assigns,

    Defendants.

GEORGIA, MUSCOGEE COUNTY
SUPERIOR / STATE COURT
FILED IN OFFICE

AUG 3 0 2023

*12:15pm* _QR_
DEPUTY CLERK

Civil Action File No._____
SC2023CV001022
JURY TRIAL DEMANDED

## PLAINTIFF'S FIRST CONTINUING INTERROGATORIES TO METLIFE

    COMES NOW, Plaintiff JERRY PAUL CARROLL, and submits the following written interrogatories to Defendant MetLife, pursuant to the Georgia Civil Practice Act, O.C.G.A. Ch. 11, T.9, for answer as provided by law.

## DEFINITIONS

    As used herein, the terms listed below are defined as follows:

8

1. The term document as used herein shall be given a very broad definition to include every type of paper, writing, data, record, graphic, drawing, photograph, audio recording, and video recording. The term includes material in all forms, including printing, written, recorded, or other. The term includes all files, records, and data contained in any computer system, computer component and/or computer storage (e.g., hard drive, disc, magnetic tape, backup system, etc.). This term includes, but is not limited to, correspondence, reports, meeting minutes, memoranda, stenographic or handwritten notes, diaries, notebooks, account books, orders, invoices, statements, bills, checks, vouchers, purchase orders, studies, surveys, charts maps, analyses, publications, books, pamphlets, periodicals, catalogs, brochures, schedules, circulars, bulletins, notices, instructions, manuals, journals, e-mails, e-mail attachments, data sheets, worksheets, statistical compilations, data processing cards, microfilms, computer records (including printouts, disks, or other magnetic storage media), tapes, photographs (positive or negative prints) drawings, films, videotapes, hard drive recordings, pictures, and voice recordings. Plaintiff expressly intends for the term "Document" to include every copy of such writing, etc. when such copy contains any commentary or notation whatsoever that does not appear on the original and any attachments or exhibits to the requested document or any other documents referred to in the requested document or incorporated by reference.

2. "**Person**" means any natural person, corporation, partnership, proprietorship, association, organization, group of persons, or any governmental body or subdivision thereof.

3. (a) "**Identify**" with respect to any "**person**" or any reference to stating the "**identity**" of any "**person**" means to provide the name, home address, telephone number, business name, business address, and business telephone number of such person, and a description of each such person's connection with the events in question.

   (b) "**Identify**" with respect to any "**document**" or any reference to stating the "**identification**" of any "**document**" means to provide the title and date of each such document, the name and address of the party or parties responsible for the preparation of each such document, the name and address of the party who requested or required the preparation of the document or on whose behalf it was prepared, the name and address of the recipient or recipients of each such document and the names and addresses of any and all persons who have custody or control of each such document or copies thereof.

9

4. **"Subject Incidents"** mean the personal injury tooth loss of Plaintiff due to Defendant, the concealment of Plaintiff being a beneficiary of a MetLife Life Insurance Policy after MetLife's agreeing to a Florida Settlement Order which created Persuasive Authority, and MetLife's overcharging Plaintiff an amount of 5.5% interest on his VA Home Loan after MetLife quoting the correct VA interest rate at that time of 4.5%.

5. **"You"**, **"Your"**, or **"MetLife"** means Defendant Metropolitan Life Insurance Company.

6. **"Similar"** shall have the meaning given in the American Heritage dictionary which is, "showing some resemblance; related in appearance or nature; alike but not identical." As used here the word "similar" shall not be limited as if modified by the word "substantially" and shall not mean "the same". If you limit the information provided because you use another interpretation of the word "similar", please state the interpretation you are using and reveal the nature of the information withheld. The terms **"and"** as well as **"or"** shall be each construed conjunctively and disjunctively as necessary to bring within the scope of each interrogatory and request for documents all information and documents that might otherwise be construed to be outside its scope. The term **"and/or"** shall be construed likewise.

7. Whenever necessary to bring within the scope of an interrogatory or request for production of documents any information or document that might otherwise be construed to be outside its scope; (i) the use of a verb in any tense shall be construed as the use of a verb in all other tenses; (ii) the use of the singular shall be construed as the use of the plural and vice versa; and (iii) the use of **"any"** includes "all" and **"all"** includes "any."

8. With regard to any term used herein that is deemed by the responding party as being ambiguous or vague, a term shall be construed in its broadest sense to encompass all reasonable definitions of that term.

## INTERROGATORIES
## METLIFE INFORMATION

1. If you contend that Plaintiff has sued the wrong party or that your name is incorrectly stated in this lawsuit, please explain the basis for your contention and identify the correct legal entity for the correct party in interest to this suit.

before MetLife's $123.5 million fine for residential mortgage fraud, the difference in increased monthly payments that Carrington refuses to address are not owed to Plaintiff by MetLife.

5.      Identify the following people (a): the MetLife person primarily responsible for State Insurance Law compliance and compliance with any Federal Insurance Law if any exists, (b): the person primarily responsible for training the persons assigned to provide insurance benefits to consumers, and (c): any persons at the VA that MetLife's Home Loans executive Matthew Pryll discussed Plaintiff's VA loan with.

6.      Identify each person MetLife expects to call as an expert witness at trial and for each expert identified: summarize the expert opinion the expert holds in regard to this case.

7.      You are requested to state why, in the Fall of 2022, you first sent a recent copy of your claimed MetLife Dental insurance policy to Plaintiff and then, about a week later, sent Plaintiff a different recent copy, and which of the two, if any, you are claiming are duplicates of Plaintiff's policy that Susan Correnti claims was previously provided although she does admit that Plaintiff asked for a copy of his dental insurance policy numerous times. Plaintiff contends that the two pages he received in 2016 are shown as MetLife's claimed 2016 dental insurance policy which is apparently incorrect.

8.      You are requested to state the name of any insurance MetLife may have that might cover Plaintiff's tooth that was lost during the period from Dr. Gary Wolanek's original recommendation for treatment in 2016, until the tooth was lost in 2022.

9.      Plaintiff has previously asked MetLife if there are any prerequisites to Plaintiff bringing the within lawsuit other than ERISA which Plaintiff did file, but MetLife has provided none. If you contend that Plaintiff has not completed any prerequisites, please explain the basis for your contention and identify the correct legal prerequisites that you contend remain.

10.      You are requested to name each, and every dentist or dentist office MetLife has spoken to who has seen Plaintiff, concerning Plaintiff's dental condition, since April 2022, to whom MetLife might pay insured treatment payments, the topic of such conversations, the conclusions made by both MetLife from such conversations, and opinions offered by Plaintiff's dentists from such conversations.

11.    The MetLife Settlement Agreement copy regarding life insurance death master file issues that was provided to Illinois was provided to Sheila Builta of Illinois who in turn provided a copy to Alabama. You are requested to name all persons who took part in composing the copy provided to Illinois.

This the 30th day of _August_, 2023

_Jerry P. Carroll_

Jerry Paul Carroll

Plaintiff

1611 21st Street

Phenix City, Alabama 36867

334 480 4072 landline, 850 240 7460 cell/text

jaybyrdcarroll@gmail.com

13